IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-01841-LTB-BNB

SHANNON BASTEDENBECK,

Plaintiff,

v.

ARISTEDES W. ZAVARAS,
GARY GOLDER,
LARRY REID,
KENNETH MARTINEZ, and
JAMES E. ABBOTT,
JOHN O'ROURKE,
JOHN DOES I-X,
JANE DOES I-X,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendant Zavaras, Golder, Reid, and Abbott's Motion for Summary Judgment with Authorities** [Doc. #63, filed 06/02/2010] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

**I. STANDARD OF REVIEW**

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS[1]

1. The plaintiff has been an inmate in the custody of the Colorado Department of Corrections ("DOC") since 1997. *Motion*, p. 2, ¶ 1 and Ex. A-1, 33:4-9; *Plaintiff's Response to Defendant Zavaras, Golder, Reid and Abbott's Motion for Summary Judgment* [Doc. #67] (the "Response"), p. 3, ¶ 1.

---

[1]The plaintiff disputes many of the defendants' material facts and sets forth additional facts of her own, but she does not always provide evidentiary support for her version of the facts. I do not consider unsupported factual statements in my analysis of the Motion.

2

2. The plaintiff and defendant Kenneth Martinez began having a sexual relationship between October and November of 2007. *Motion*, p. 2, ¶¶ 2-3 and Ex. A-1, 22:2-12; *Response*, p. 3, ¶¶ 2-3. At the time, the plaintiff was incarcerated at La Vista Correctional Facility ("LVCF"), and Martinez was a Lieutenant at LVCF. *Complaint*, ¶ 1; *Response*, Ex. 3, 31:15-16.

3. An inmate cannot by law consent to sexual contact with a prison guard. Staff sexual contact with an inmate falls under the definition of rape. *Response*, p. 3, ¶2 and Ex. 1, 55:6-56:5; *Defendant Zavaras, Golder, Reid, and Abbott's Reply in Support of Motion for Summary Judgment* [Doc. #72] (the "Reply"), pp. 1-2.

4. LVCF Inmates Harrison and Legler were aware of the conduct occurring between the plaintiff and Martinez and would act as "lookouts" for Martinez. *Response*, p. 4, ¶ 5 and Ex. 3, 16:2-17:13; *Reply*, pp. 1-2.

5. The plaintiff did not seek any assistance to stop the relationship prior to the end of January 2008 because until then she did not want the relationship to end. *Motion*, p. 2, ¶ 4 and Ex. A-1, 23:9-11; *Response*, p. 3, ¶ 4.

6. At the end of January or the beginning of February 2008, the plaintiff wanted the relationship to end because other inmates were accusing Martinez of showing favoritism toward her. According to the plaintiff, the other inmates submitted a written kite to Martinez's sergeant; the sergeant and Martinez were best friends; and the sergeant showed Martinez the written note. The plaintiff does not remember the name of the sergeant. *Response*, pp. 3-4, ¶ 4 and Ex. 3, 29:2-30:13; *Reply*, pp. 1-2.

7. In early February 2008, the plaintiff confided in inmate Nelson regarding her relationship with defendant Martinez. *Motion*, p. 3, ¶ 6 and Ex. A-1, 18:4-21 and 26:8-14; *Response*, p. 4, ¶ 6.

8. On February 25, 2008, Nelson went to the plaintiff's case manager about the conduct between the plaintiff and Martinez because the plaintiff did not know how to handle the situation. In February or early March, Legler met with the case manager. *Response*, p. 4, ¶ 5 and Ex. 3, 17:4-18:21; *Reply*, pp. 1-2.

9. Prior to February 25, 2008, the plaintiff did not discuss her problems regarding Martinez with any staff member. *Motion*, p. 3, ¶ 7 and Ex. A-1, 28:12-22; *Response*, p. 4, ¶ 7.

10. Defendant Reid has been the Warden at LVCF since October 2007. *Motion*, p. 3, ¶ 8 and Ex. A-2, ¶ 1; *Response*, p. 4, ¶ 8. Prior to February 25, 2008, the plaintiff never spoke to or otherwise contacted Reid regarding her relationship with Martinez, and Reid was unaware of any staff misconduct allegations involving the plaintiff (or any other inmate at LVCF) during his tenure as Warden. *Motion*, p. 3, ¶¶ 10-11; Ex. A-2, ¶¶ 2-5; and Ex. A-1, 14:6-17; *Response*, p. 5, ¶ 10-11.

11. Defendant Zavaras is currently the Executive Director of the DOC. He was not involved in the daily operation of LVCF at any time. He had no contact with the plaintiff. *Motion*, pp. 3-4, ¶¶ 11-13; Ex. A-3 and Ex. A-1, 9:20-10:19; *Response*, pp. 5-6, ¶¶ 11-13.

12. Defendant Golder was the Director of Prisons in 2008. He was not involved in the daily operations at LVCF during 2008 or at any other time. The plaintiff has never met Golder nor has she ever contacted him about her relationship with Martinez or other issues. Prior to the

2008 incident, Golder was unaware of any staff sexual misconduct allegations at LVCF. *Motion*, p. 4, ¶¶ 14-15; Ex. A-4; Ex. A-1, 12:5-13:1; *Response*, pp. 6-7, ¶¶ 14-15.

13. Defendant Abbott was the Warden at the Colorado Women's Correctional Facility during 2007-2008. Abbott was not involved in the daily operation of LCVF in 2008 or at any other time. Other than Abbott saying hello "just in passing," the plaintiff never met Abbott; she has ever contacted him about her relationship with Martinez or other issues; and Abbott has never had any contact with her. *Motion*, p. 4, ¶¶ 16-18; Ex. A-5; Ex. A-1, 14:18-15:20; *Response*, p. 7, ¶¶ 16-18.

14. Defendant O'Rourke[2] was a corrections officer at the Colorado Women's Correctional Facility. He did not have any involvement in the events at LVCF. The plaintiff's claim against O'Rourke is based on his denial of access to her attorneys while she was incarcerated at the Colorado Women's Correctional Facility. Although the plaintiff understood and utilized the grievance procedure available to her, she did not file any grievances regarding access to her attorneys because it never happened again and her attorneys worked it out with the facility. *Motion*, p. 5, ¶¶ 20-22, 25 and Ex. A-1, 8:17-9:19, 10:20-12:4; *Response*, pp. 7-9, ¶¶ 20-22, 26.

---

[2]The defendants state that "O'Rourke was terminated as a defendant in this action on September 8, 2009, and was never reinstated as a defendant." *Motion*, p. 4, ¶ 19. Although it appears that O'Rourke was inadvertently removed from the docket's list of defendants, the order of the district judge issued on September 8, 2009, clearly dismisses O'Rourke solely in his official capacity [Doc. #33]. Thus, the claims against O'Rourke in his individual capacity are extant.

15. The DOC compiles data based on the Prison Rape Elimination Act ("PREA"). The data concerns sexual misconduct in the State of Colorado prisons. *Motion*, p. 5, ¶ 24 and Ex. A-6, ¶ 2-5; *Response*, p. 8, ¶ 24. The statistics reveal the following incidents reported for LVCF:

(a) in 2005, there was one incident of unsubstantiated (evidence was insufficient to make a determination that the event occurred) staff-on-inmate sexual misconduct (active or passive sexual contact or fondling);

(b) in 2006, there was one unfounded (the event was determined NOT to have occurred) incident of staff-on-inmate sexual assault (unwanted sexual intrusion or penetration by force, threat, coercion, or intimidation); one unfounded incident of staff-on-inmate sexual harassment (active or passive sexual contact, grabbing or fondling, romantic relationships, and love letters); and three unfounded incidents of staff-on-inmate sexual misconduct;

(c) in 2007, there was one substantiated (the event was investigated and determined to have occurred) and one unsubstantiated incident of staff-on-inmate sexual misconduct; and

(d) in 2008, there was one substantiated incident of staff-on-inmate sexual harassment.

*Motion*, p. 5, ¶ 24 and Ex. A-6; *Response*, pp. 8-9, ¶ 25.

The Complaint asserts four claims for relief. Claim One alleges that the defendants violated the plaintiff's Eight Amendment rights because they "denied the claims of most women alleging rape and other misconduct" instead of "seeking to remedy the institutional policies and procedures that place female inmates at risk of harm from male corrections officers"; they "do not properly report the incidence of staff on inmate sexual misconduct" under PREA; their "policies and practices permit too many opportunities for male corrections officers to be alone with female inmates"; they "permit and promote a culture of corruption that permits the abuse of

6

female inmates and the cover up of misconduct"; and "[w]hen female inmates complain of sexual misconduct by corrections officers they know that they will be immediately put in solitary confinement and reasonably expect that they will be subjected to retaliation, threats and punishment."

Claim Two alleges that the defendants violated the plaintiff's First Amendment rights when "defendants or persons acting under their authority" interfered with her ability to communicate her situation to counsel; "defendants or persons acting under their authority" censored or otherwise intercepted the plaintiff's mail while she was in administrative segregation so that she could not communicate her situation to others; and the plaintiff was "removed from the general population and held incommunicado" then was "terrorized for over 30 days regarding what would be done to her for her involvement in the crimes of Defendant Martinez."

Claim Three alleges that the defendants denied the plaintiff her Sixth Amendment right to counsel because after she was put in administrative segregation, she placed in the legal mail box a letter to an investigator for her attorney and the investigator never received the letter; in July 2008, her attorney attempted to meet with her and was told that he could not because she was "again in administrative segregation"; and her attorney attempted to meet with her at the end of July and "was not allowed a suitable legal visit" because she was "placed in a room shackled and manacled with a barrier between her and counsel" and "could not review or sign documents." Claim Three further alleges that the plaintiff was placed in segregation for a year based on "some specious infraction"; the defendants "conducted some kind of proceeding" and "tried to keep counsel from finding out"; and "[t]his new punishment is part of the pattern of punishment that is meted out to women who are the victims of rape by prison guards."

7

Claim Four alleges that the plaintiff was denied "fundamental fairness under the Fourth Amendment." Specifically, the plaintiff alleges Martinez was arrested; spent 20 minutes in custody; and was placed on administrative leave with full pay. When he was "sentenced for this criminal conduct with multiple inmates over several years he did not spend any time in prison." The plaintiff, on the other hand, was put in solitary confinement for over a month immediately after "discovering the crime of Defendant Martinez"; "chastised by inmates and corrections officers alike"; and "faces a course of multiple future penal disciplines until she is released to parole or reaches her maximum sentence release date." Finally, Claim Four alleges that the defendants do not afford the plaintiff any "procedural mechanism to oppose the procedures that affect the conditions of her confinement."[3]

The plaintiff seeks monetary damages. The DOC, LVCF and the Colorado Women's Correctional Facility have been dismissed with prejudice [Doc. #6], and the individual defendants have been dismissed without prejudice insofar as they are sued in their official capacities [Doc. #33]. The remaining claims are against the individual defendants in their individual capacities.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the

---

[3]It is unclear whether the plaintiff is asserting a claim under the Fourth Amendment or whether she is asserting a due process violation under the Fourteenth Amendment. See *Response*, p. 12, a. I need not determine the constitutional basis for Claim Four, however, because I find that the plaintiff has failed to establish that the defendants personally participated in the alleged actions/inactions.

deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. Qualified Immunity

The defendants assert that they are entitled to qualified immunity on the plaintiff's claims. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity not only shields a defendant from unwarranted liability, it also protects the defendant from the burdens of defending a suit. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The qualified immunity defense is available only to government officials sued in their individual capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts a qualified immunity defense on summary judgment, a heavy two-part burden shifts to the plaintiff. Medina, 252 F.3d at 1128. The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right." Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted). The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue."[4] Id. "A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

---

[4] The order in which I may consider these factors is discretionary. Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Shroff v. Spellman, 604 F.3d 1179, 1188 (10th Cir. 2010).

9

authority from other courts has found the law to be as the plaintiff maintains. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." Medina, 252 F.3d at 1128.

The defendants assert that the plaintiff has failed to establish any facts showing that they personally participated in the alleged constitutional violations. The Tenth Circuit has summarized the parameters of supervisory liability under section 1983:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. There is no concept of strict supervisor liability under § 1983. This does not mean that a supervisor may not be liable for the injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part.
>
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights. In short, the supervisor must be personally involved in the constitutional violation, and a sufficient causal connection must exist between the supervisor and the constitutional violation.
>
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because mere negligence is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted

> knowingly or with deliberate indifference that a constitutional violation would occur.

Serna v. Colorado Dep't. of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006) (diffuse and quotations omitted).

The plaintiff has failed to show that defendants Zavaras, Golder, Reid, and Abbott are culpable for any of the alleged constitutional violations. The plaintiff attempts to paint a picture of continuing, wide spread, and obvious sexual misconduct which the defendants purposely ignored. However, no evidence supports the plaintiff's characterization.

The plaintiff claims that "[e]ach Defendant knew that their failure to protect inmates within the Colorado Department of Corrections from the one to two rapes per month was a violation of 'clearly established' constitutional rights." *Response*, p. 16. However, the incidence of rape reported throughout the entire DOC system is not probative of whether the defendants were deliberately indifferent to the risk of sexual misconduct against the plaintiff at LVCF, the facility in question. The record shows that at LVCF from 2005 to 2008, there was one substantiated incident of staff-on-inmate sexual misconduct in 2007, and one substantiated incident of staff-on-inmate sexual harassment in 2008. These rare and isolated incidents are insufficient to establish that the defendants ignored the risk of or acquiesced in the alleged constitutional violations against the plaintiff.

The plaintiff argues that "[t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Response*, p. 14 (internal quotations omitted). The defendants are not

municipalities; they are individuals being sued in their individual capacities. The plaintiff cannot hold the individual defendants liable under a theory of municipality liability.

After the defendants' Motion was fully briefed, the defendants filed a "Notice of Supplemental Authority" [Doc. #73] which contained the transcript of a motions hearing in Civil Action No. 08-cv-01829-RPM. The action was brought by Laura Lobozzo against the DOC, LVCF, Zavaras, Golder, Reid, Abbott, and others. The issues in the Lobozzo case are substantially similar to the issues in this case. After hearing evidence, the district judge granted summary judgment in favor of the defendants.[5]

Subsequently, the plaintiff filed a "Response to [73] Supplement/Amendment, Plaintiff's Affidavit and Case Law in Opposition" (the "Supplemental Response") [Doc. #75]. Attached to the Supplemental Response are the affidavit and expert report of Jeffrey A. Schwartz, Ph.D., in which Dr. Schwartz opines that the plaintiff would not have been the victim of sexual misconduct if not for the actions/inactions of Zavaras, Golder, Reid, and Abbott. However, the affidavit and report do not contain any factual basis to establish that these defendants acted knowingly or with deliberate indifference that the plaintiff would suffer a constitutional violation.

For example, Dr. Schwarz refers to other incidents of sexual misconduct toward female inmates [Doc. #75-2, p. 30].[6] With the exception of Ms. Lobozzo, there is no evidence that any

---

[5]The perpetrator, Anthony Martinez (no relation to defendant Kenneth Martinez in this case), was dismissed from the case as a result of bankruptcy proceedings [Civil Action No. 08-cv-01829-RPM, Doc. #71].

[6]I cite to the document number and page numbers of Dr. Schwartz's affidavit and report as they are assigned by the court's docketing system.

of the other incidents took place at LVCF and were made known to the defendants prior to the victimization of the plaintiff.[7] The defendants cannot be liable for failing to protect the plaintiff based on one previous incident of sexual misconduct against Ms. Lobozzo. There are simply no facts to establish a pattern of sexual misconduct at LVCF so pervasive that the defendants acted knowingly or with deliberate indifference that the plaintiff would be the victim of sexual misconduct.

Dr. Schwartz also states that it is evident that the DOC "thoroughly" ignores the problem of staff sexual misconduct with inmates because staff at LVCF did not follow procedures relevant to staff sexual misconduct after learning of Martinez's sexual misconduct with the plaintiff [Doc. #75-2, p. 34]. However, the failure of unidentified staff members to follow post-misconduct procedures does not establish that the defendants actively participated or acquiesced in Martinez's sexual misconduct with the plaintiff.

The record does not contain any evidence to show that defendants Zavaras, Golder, Reid, and Abbott acted knowingly or with deliberate indifference with regard to the sexual misconduct of Martinez or any of the other constitutional violations alleged in the Complaint. Therefore, these defendants are entitled to qualified immunity. The Motion should be granted insofar as it seeks summary judgment in favor of defendants Zavaras, Golder, Reid, and Abbott.

---

[7]Dr. Schwartz states that defendant Kenneth Martinez sexually victimized another inmate, Amber Haller, but that the staff at LVCF did not discover this misconduct until they investigated the plaintiff's situation. Thus, the defendants had no knowledge of Martinez's sexual misconduct with Haller at the time of his misconduct with the plaintiff. Dr. Schwartz also states that the plaintiff told him of "other instances where she was certain that female inmates at LVCF were being or had been victimized by staff sexual misconduct." However, there are no facts to show (other than Ms. Lobozzo's case) that these incidents were reported to LVCF prison officials.

## B. Exhaustion

Although the defendants did not file the Motion on behalf of defendant O'Rourke, it is clear from the record that he should be dismissed. It is undisputed that O'Rourke was a corrections officer at the Colorado Women's Correctional Facility; he did not have any involvement in the events at LVCF; the plaintiff's claim against O'Rourke is based on his denial of access to her attorneys while she was incarcerated at the Colorado Women's Correctional Facility; and although the plaintiff understood and utilized the grievance procedure available to her, she did not file any grievances regarding access to her attorneys because it never happened again and her attorneys worked it out with the facility.

Because the plaintiff's claims challenge prison conditions, they are governed by the Prison Litigation Reform Act (the "PLRA"). 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The Supreme Court has interpreted section 1997e(a) to require, prior to filing a lawsuit, that the inmate exhaust all available administrative remedies whether the inmate is seeking injunctive relief, monetary damages, or both. Booth v. Churner, 532 U.S. 731 (2001). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at 741 n.6.

It is undisputed that the plaintiff did not exhaust her administrative remedies as to her claim against O'Rourke. Accordingly, he should be dismissed from this action.

14

## IV. CONCLUSION

I respectfully RECOMMEND that:

(1) The Motion [Doc. # 63] be GRANTED and that summary judgment be entered in favor of defendants Zavaras, Golder, Reid, and Abbott on all of the claims against them; and

(2) The claim against defendant O'Rourke be dismissed based on the plaintiff's failure to exhaust her administrative remedies.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated October 26, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge